UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| GREG HERDEN, ROGER HERDEN, and GARRETT HERDEN, | Civil No. 10-435 (JRT/LIB) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| UNITED STATES, | |
| Defendant. | |

Jeff H. Eckland, Kate H. Kennedy, Mark J. Blando, and Timothy M. Connelly, **ECKLAND & BLANDO LLP**, 10 South Fifth Street, Suite 1020, Minneapolis, MN  55402, for plaintiffs.

Gregory G. Brooker and Lonnie F. Bryan, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE,** 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN  55415; Gay Elizabeth Kang and Sarah Williams, **UNITED STATES DEPARTMENT OF JUSTICE**, P.O. Box 340, Ben Franklin Station, Washington, D.C. 20044, for defendant.

Greg Herden, Roger Herden, and Garrett Herden ("the Herdens") brought the instant action against the United States pursuant to the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 1346(b)(1), 2671-2680.  The Herdens allege that they suffered injuries and loss of property, including the loss of their family's three-generation cattle operation, because of the United States' negligence.  The United States claims that, under Federal Rule of Civil Procedure 12(b)(1), the Court does not have subject-matter jurisdiction.  Because the United States is entitled to sovereign immunity for the discretionary acts of its agents, the Court lacks the subject-matter jurisdiction necessary

to hear the merits of the Herdens' claims. The Court, therefore, dismisses Herdens' claims.

## BACKGROUND

In May 2004, the Herdens began participating in the Environmental Quality Incentives Program ("EQIP"), run by the Natural Resource Conservation Service ("NRCS") of the United States Department of Agriculture. (Greg Herden Decl. ¶¶ 9-10, August 9, 2011, Docket No. 35.) EQIP provides direct payments to farmers in exchange for their implementation of environmental conservation measures. 7 C.F.R. § 1466.1(a).

An employee of NRCS, Howard Moechnig, created a Managed Rotational Grazing Plan for the Herdens' land as part of their participation in EQIP. (Herden Decl. ¶ 12, Docket No. 35.) The Plan included a seed mixture that Moechnig directed the Herdens to plant on their land. (*Id.* ¶ 15.) This seed mixture included six pounds per acre of Alsike Clover, four pounds per acre of Timothy, and three pounds per acre of Creeping Foxtail. (*Id.* ¶ 5; Decl. of Howard Moechnig, Oct. 26, 2010, Ex. 2, at 25, Docket No. 23.) Greg Herden alleges that he told Moechnig that he was not comfortable planting this large quantity of Alsike Clover because of its propensity to create toxic hay. (Herden Decl. ¶ 16, Docket No. 35.) According to Herden, Moechnig told him that if he did not plant the Alsike Clover as directed, he would be fined, required to pay liquidated damages, and prohibited from participating in EQIP because of his failure to follow the dictates of the program. (*Id.* ¶ 17.)

After the Herdens planted the seed mixture and fed the resulting hay to their cattle, many calves and adult cattle died. (*Id.* ¶ 22.) According to the Herdens, testing of the

hay revealed that it was toxic, and postmortem testing of the cattle revealed that their blood was not coagulating and that a genus of mold was present in their stomachs. (*Id.* ¶¶ 23-24.) The Herdens allege that these deaths resulted from the level of Alsike Clover prescribed by Moechnig. The United States avers that its own investigation concluded that the Alsike Clover did not cause the cattle's death. (Decl. of William Hunt, Oct. 27, 2010, Ex. 1, at 5, Docket No. 23.)

In formulating seed mixtures, NRCS staff members like Moechnig use the Minnesota Field Office Technical Guide, which includes conservation standards applicable in Minnesota. (*See id.* at 7.) Among those standards is Conservation Practice Standard No. 512, Pasture and Hay Planting ("Code 512"), which contains information about seeding rates. (Decl. of Moechnig, Ex. 2, at 7-21, Docket No. 23.)

Code 512 guides NRCS employees regarding the formulation of seed mixtures for EQIP participants. (*Id.* at 3.) It contains two tables with seeding rates listed for various legumes, grasses, and legume-grass mixtures, including Alsike Clover. (*Id.* at 13-19.) The seeding rate listed for Alsike Clover is two pounds per acre for mixtures, far less than the six pounds per acre prescribed by Moechnig for the Herdens' farm. (*See id.* at 13.) Code 512 does not state whether two pounds per acre is a minimum, maximum, or optional seeding rate. (*Id.*)

Code 512 also states: "Seedings for both pasture & hay may be pure stands of legumes or grasses, or legume-grass mixtures. Mixtures **will** have a recommended seeding rate of **50-70 seeds per square foot**." (*Id.* at 8) (emphasis added). The parties dispute whether this statement mandates a maximum rate of 70 seeds per square foot.

(*See id.*)  Moechnig's mixture for the Herdens included 271.35 seeds per square foot, including 96 seeds per square foot of Alsike Clover, far above a 70 seeds per square foot rate.  (*See id.*)

## ANALYSIS

### I.   STANDARD OF REVIEW

It is the plaintiff's burden to establish that jurisdiction exists.  *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).  In deciding a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Id.*   If the Court finds that jurisdiction is not present, it must dismiss the matter.  Fed. R. Civ. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–84 (1999).

The Court has subject-matter jurisdiction over a claim against the United States only if the United States has waived its sovereign immunity.  *United States v. Orleans*, 425 U.S. 807, 814 (1976).  The United States has waived immunity for some actions in tort, under the FTCA.  28 U.S.C. § 2674; *see United States v. Kubrick*, 444 U.S. 111, 117-18 (1979) ("[T]he [FTCA] waives the immunity of the United States and [courts] should not take it upon [them]selves to extend the waiver beyond that which Congress intended.").  The FTCA allows plaintiffs to bring claims where the United States' negligence has led to the death of animals.  *E.g.*, *United States v. Kelly*, 236 F.2d 233, 235 (8th Cir. 1956).  However, there are exceptions when the United States does not waive immunity for actions in tort.  28 U.S.C. § 2680; *Demery v. U.S. Dept. of Interior*, 357 F.3d 830, 832 (8th Cir. 2004).  The United States argues that one of these exceptions,

the FTCA's discretionary function exception, bars the Herdens' claims.  *See* 28 U.S.C. § 2680(a).

## II.   DISCRETIONARY FUNCTION EXCEPTION

The discretionary function exception maintains sovereign immunity for "[a]ny claim based upon an act or omission of an employee of the Government . . . based upon the exercise or performance [of] a discretionary function . . . whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  Thus, if a federal employee performs a discretionary function, a plaintiff cannot sue the United States for such performance, even if the employee is negligent.  *Demery*, 357 F.3d at 832.

Courts use a two-step process to determine if the discretionary function exception applies to an FTCA claim.  First, the government must establish that its employee's actions involved an element of judgment or choice.  *Id*.  If a statute, regulation, or specific policy dictates the employee's actions, the discretionary function exception does not apply.  *Id.*

Second, the Court must determine if the judgment exercised is the kind that Congress designed the discretionary function exception to protect.  *Demery*, 357 F.3d at 832.  "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  *United States v. S.A. Empresa de Viacao Aerea Rio Grandense* (*Varig Airlines*), 467 U.S. 797, 814 (1984).  Courts presume that a governmental employee's discretionary acts are grounded in policy.  *Demery*, 357 F.3d at 833.  The plaintiff has the burden to rebut this presumption.  *Id.*

### A.     Discretion

In analyzing the discretionary function exception, the Court must first determine if Moechnig had a choice regarding the maximum amount of Alsike Clover he could prescribe for the Herdens' seeding mixture. *See* 7 C.F.R. § 1466.9(a); *C.R.S. v. United States*, 11 F.3d 791, 796 (8th Cir. 1994) ("Judgment or choice is absent when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow because then the employee has no rightful option but to adhere to the directive." (internal citations omitted)).

Code 512 states that "[m]ixtures **will** have a recommended seeding rate of 50-70 seeds per square foot." (Decl. of Moechnig, Ex. 2, at 8, Docket No. 23 (emphasis added).) However, Code 512 also lists rates of **over** 70 seeds per square foot for certain legumes and grasses, such as Timothy and Kura Clover. (*Id.* at 13-19.) Code 512 either does not establish a maximum rate of 70 seeds per square foot, or it contradicts this maximum through its specific seeding rates. Either way, there is no unequivocal mandate that NRCS employees can follow, leaving decisions about seeding mixtures to the discretion of employees like Moechnig.[1]  *See, e.g.*, *C.R.S. v. United States*, 11 F.3d 791, 799-800 (8th Cir. 1994) (holding that, where an agency's guidance is "unclear and insufficiently specific," the discretionary function exception applies).

---

[1] The United States argues that the entirety of Code 512 is discretionary. The Court declines to opine on the entire standard because only the discretionary nature of the seeding rates is before the Court.

### B. Public Policy Considerations

The second step in analyzing the discretionary function exception is determining if the discretion at issue involves social, economic, and political policy considerations. 28 U.S.C. § 2680(a); *Oceanview Farms, L.P. v. United States*, No. 99-2096, 2000 WL 530355, at *1 (4th Cir. May 3, 2000). Moechnig stated that he weighed various policy considerations when formulating the Herdens' seeding mixture. (Decl. of Howard Moechnig, Ex. 2, at 3-4, Docket No. 23.) These considerations were improving the environmental quality of the land and its surrounding natural resources, establishing good vegetation for years to come, enhancing soil quality and ground and surface water quality, preventing erosion, providing cost effectiveness, creating wildlife habitat, and providing good forage that would meet the nutritional needs of the Herdens' cattle. (*Id.*); *see also* 7 C.F.R. § 1466.4 (discussing the national policy priorities of EQIP). These policy considerations are the type that the discretionary function exception protects. *See Oceanview Farms, L.P.*, 2000 WL 530355, at *1.

The Herdens have not rebutted the presumption that Moechnig's decision was based in policy considerations. The only evidence before the Court on this issue is Moechnig's declaration that he considered policies, as well as regulations regarding the policy purposes of the EQIP program. *See* 7 C.F.R. § 1466.4.

The Court is very sympathetic to the financial difficulties experienced by the Herdens and understands their desire for a day in court, but it is quite clear that the discretionary function exception of the FTCA prohibits this action. Moechnig had

discretion to formulate seeding mixtures based on policy considerations. Accordingly, the Court finds that the United States has immunity from the Herdens' claims.[2]

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the United States' Motion to Dismiss for Lack of Jurisdiction [Docket No. 20] is **GRANTED**. Plaintiffs' claims are **DISMISSED.**

DATED:  September 29, 2011         s/ John R. Tunheim
at Minneapolis, Minnesota.                  JOHN R. TUNHEIM
                                                                          United States District Judge

---

[2] The United States also argues that the Herdens' FTCA claims can be reduced to allegations of misrepresentation, a tort from which the United States has immunity. *See* 28 U.S.C. § 2680(a). This argument is incorrect. The Herdens have not alleged a tort of misrepresentation. Furthermore, the gravamen of the Herdens' FTCA claims are not based on Moechnig's alleged statements that the level of Alsike Clover was proper. (*See* Compl. ¶ 15.) Rather, the Herdens' FTCA claims are based on pure negligence because Moechnig allegedly **demanded** that they plant a harmful seed mixture. *See Jimenez-Nieves v. United States,* 682 F.2d 1, 5 (1st Cir. 1982) (a "false statement [that] not only conveys information but also operates as an instruction or a direction [takes a case] some distance from the providing information for making up one's mind rationale [of the misrepresentation exception]" (quotation marks omitted). Accordingly, the United States cannot claim immunity through the misrepresentation exception.